UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MUFTI ABDUL EL-MALIK-BEY ALI a/k/a FRANCES L. SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSHEPH BECKER, et al.,<br><br>    Defendants. | CAUSE NO. 3:21-CV-276-JD-MGG |

OPINION AND ORDER

Mufti Abdul El-Malik-Bey Ali, a/k/a Frances L. Smith, a prisoner without a lawyer, filed a complaint alleging he was sexually harassed at the Miami Correctional Facility. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Ali alleges Officer Joseph Becker came to his cell on May 16, 2020. Ali asked him, "what's up little fella … what little fella do you weight, about 340 lbs."? ECF 1-1 at 1. Becker responded, "My dick weighs about that much [and] was swinging his hips . . .." ECF 1-1 at 22. Ali alleges this violated the Prison Rape Elimination Act (PREA), 34

U.C.S. § 30301, *et seq.*, but PREA does not provide a private right of action. *Johnson v. Garrison*, __ F. App'x __, __; 2021 WL 4429039, at *1 (10th Cir. Sept. 27, 2021); *Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020); and *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015). Though Becker's comments were bawdy, "simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). In *Dobbey v. Illinois Department of Corrections*, 574 F.3d 443 (7th Cir. 2009), the court explained harassment must be extreme to violate the Eighth Amendment. In that case, a black prisoner alleged a correctional officer harassed him by placing a noose where he could see it and "crossed his arms looking crazy with evil eyes." *Id.* at 444. The court explained:

> Any harassment of a prisoner increases his punishment in a practical sense, if we equate punishment to the infliction of disutility (and why not?). But harassment, while regrettable, is not what comes to mind when one thinks of "cruel and unusual" punishment. Nor does it inflict injury comparable in gravity to failing to provide a prisoner with adequate medical care or with reasonable protection against the violence of other prisoners. The line between "mere" harassment and "cruel and unusual punishment" is fuzzy, but we think the incident with the noose and the "evil eyes" falls on the harassment side of the line because it was not a credible threat to kill, or to inflict any other physical injury. The case falls well short of *Burton v. Livingston*, 791 F.2d 97, 100-01 (8th Cir.1986), where a prisoner alleged that a guard pointed a gun at him, cocked it, called him "nigger," and repeatedly threatened to shoot him, or *Irving v. Dormire*, *supra*, 519 F.3d at 449-50, where a prisoner alleged that a guard had threatened to kill him, repeatedly offered a bounty to any prisoner who would assault him, and gave a prisoner a razor blade with which to assault him. See also *Northington v. Jackson*, *supra*, 973 F.2d at 1524.

*Dobbey*, 574 F.3d at 446. Here, Becker's alleged comment was not even close to the harassment inflicted in *Dobbey*.

2

Next, Ali alleges Officer Becker delayed him from reporting the bawdy comment by refusing to call a higher ranking officer and by ordering him to leave a communication kiosk and return to his cell while all inmates in the prison were counted for security reasons. ECF 1 at 8-13 and ECF 1-1 at 2. While in his cell, Ali wrote a statement which he promptly gave to another guard and subsequently sent to numerous people. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Here, Ali was briefly delayed in communicating, but "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). This delay was such a case.

While he was sitting at the kiosk, before he went to his cell for count, Ali alleges "[w]ith no warning [Officer Becker] said I am going to mace you." ECF 1-1 at 2. In response, Ali went to his cell. Ali argues it was an excessive use of force for Officer Becker to say he was going to mace him. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). "[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*,

3

475 U.S. 312, 320-21 (1986) (quotation marks and citation omitted). Here, Officer Becker did not use any force, he merely spoke to Ali.

Ali, believing he had been subjected to a PREA violation, mailed his statement about the bawdy comment to Officer Becker, Lt. McCullum, Grievance Officer Shawna Morrison, Warden William Hyatt, Internal Affairs Officer Dice, and Lt. N. Harris. ECF 1 at 15. He argues they did not promptly respond to him and did not properly investigate his allegations. However, the Constitution does not require officials to investigate or otherwise correct wrongdoing once it ends. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 736 (7th Cir. 2016) (no constitutional right to a grievance process); *Cf. Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("We note at the outset that Rossi does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction.").

Ali alleges Officer Becker wrote, and Lt. McCullum permitted a false conduct report to be filed against him. ECF 1 at 16-17. "[P]risoners are entitled to be free from arbitrary actions of prison officials, but . . . even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). Here, Ali was not denied due process. Indeed, the charges against him were dismissed.

Ali alleges Officer Becker refused him a Kosher Meal on July 25, 2020. ECF 1 at 18. Inmates are entitled to adequate food. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). However, missing a single meal is not unusual. There are many reasons why

4

people, inmates and free citizens alike, will occasionally miss a meal. In *Morris v. Kingston*, 368 F. App'x 686 (7th Cir. 2010), the Seventh Circuit considered a much more extreme case where an inmate involuntarily missed 17 meals over 23 days. The court explained that "[t]o establish an Eighth Amendment violation, a prisoner must show that he has been severely harmed and that prison officials were deliberately indifferent to that harm." *Id*. at 688–89. The court concluded that the plaintiff in *Morris* had not "establish[ed] a constitutional violation because he ha[d] not shown that missing his meals … caused serious harm or lasting detriment." *See also Freeman v. Berge,* 441 F.3d 543, 547 (7th Cir. 2006) (concluding that even a 45-pound weight loss would not support a claim without evidence of serious suffering or lasting harm). So too here. There is no indication that missing a single meal caused Ali to suffer serious harm or lasting detriment.

Ali alleges numerous violations of prison policies. However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state statutes, administrative regulations or prison rules. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) and *Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.").

Ali names Program Director K. Snow as a defendant, but makes no mention of Director Snow in the body of the complaint. Because Ali has not stated a claim against any of the of the other defendants based on the facts alleged in the complaint, even if Director Snow had engaged in the same conduct, such allegations would not state a

5

claim. To the extent Ali might allege Director Snow engaged in other conduct, such claims would not be related to the other claims in this case and could not be brought in this case because "unrelated claims against different defendants belong in different suits," *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

This complaint does not state a claim for which relief can be granted. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, this case is **DISMISSED** under 28 U.S.C. § 1915A.

SO ORDERED on October 8, 2021

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT